Peter M. Daly, J.
The plaintiff created a comic atrip entitled “ Melvin The Monster ” in December, 1952 and put it on paper in January, 1953. On December 13, 1953, he entered into an agreement with Famous Funnies Publications for its publication. It appeared on five pages of the July, 1955 issue of the comic magazine known as Famous Funnies comprising 36 pages including the front and back covers. This magazine ceased publication with that issue.
In the month of April or May, 1956 defendant Hercules Publishing Oorp. started the publication of a comic magazine entitled Melvin The Monster, a name that it had not theretofore created or used. This issue appeared on the newsstands in June, 1956. The plaintiff’s attorneys demanded in letters dated June 20, 1956, that the defendants cease all further publication under this title, character and format claiming that plaintiff was the *1062 proprietor thereof and that the defendants account for all profits. The defendants’ then attorney replied that he would communicate with plaintiff’s attorneys when an investigation into the facts was completed. The publication and distribution of this magazine, however, continued in September and November, 1956 and February, June and July, 1957. The three 1956 issues were distributed by the defendant Atlas Magazines, Inc., and the three 1957 issues by American News Company, Inc., all at the direction of the defendant Hercules Publishing Corp. This action was then instituted for a permanent injunction, for an accounting and for damages allegedly sustained by plaintiff as the result of the defendants’ use of his title and material.
Plaintiff sold the comic strip character in question to Famous Funnies Publications by a letter dated December 13,1954, which was signed by Harold A. Moore for the magazine. He received about $170 for the first and only publication. In that writing it was agreed that the title and characters of Wee Three and Melvin The Monster would be the property of Famous Funnies Publications during the time they appeared in that magazine as a bimonthly, but this applied only to comic magazine rights and that the title and characters would revert to plaintiff when Famous Funnies discontinued publishing them. Plaintiff also reserved his right to sell the foregoing title and characters “ for newspaper syndication, toys, or any other medium outside of comic hooks without any royalty payments to Famous Funnies Publications.” It was further agreed that if the foregoing comic characters are published as a comic book title, a new agreement shall be drawn up as to price per page and royalties.
It is plaintiff’s contention that he is entitled to recover damages on three theories (1) for the defendants’ invasion of his rights to the fruits of Ms literary property, (2) unfair competition practiced by the defendants to the plaintiff’s detriment and (3) the deliberate infliction of injury by interference with plaintiff’s valuable contract rights involving- the comic strip character created by him.
The proof shows that plaintiff never offered the comic strip title Melvin The Monster or any other phase thereof to any one following its single publication in the July, 1955 issue of the magazine Famous Funnies, much less had it published; consequently, the defendants’ publication of the six issues of the magazine Melvin The Monster did not result in unfair competition with any simultaneous publication of the title, character o,r format created by the plaintiff. Nor was there any interference by the defendants with any contractual rights concerning the comic atrip character here involved. As already pointed *1063 out the publication of the magazine in which it appeared for the first and only time was discontinued after the first publication in July, 1955, about a year before the publication of the defendants ’ magazine was commenced.
The sole question remaining is whether upon the facts in this case the defendants invaded plaintiff’s rights to the fruits of his creative activity. Plaintiff claims that the defendants did so because the publication in the magazine Famous Funnies of the title and comic strip character in question was limited. The court is unable to agree with this view, even though it finds that as far back as March, 1956, Stan Lee, the editor of the magazine Melvin The Monster, knew that plaintiff had created such character. The publication of that comic strip in the July, 1955 issue of Famous Funnies was not a limited disclosure for a particular purpose; it was a general publication in a magazine of general circulation to the public and could thereafter be used by anyone with impunity. No secondary meaning ever attached to the comic strip character involved connecting it with the plaintiff, nor did he preserve his property rights therein by acquiring a United States copyright or registering it under a trade name. Indeed, the magazine in which it was published does not appear to have been copyrighted.
Under these circumstances the court finds that the comic strip character and title Melvin The Monster were in the public domain when used by the defendants and, accordingly, they are not accountable to the plaintiff in damages or otherwise. The complaint is therefore dismissed on the merits, without costs. This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Submit judgment.